**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**KENNETH F. PITCHFORD,**
    Petitioner,

vs.                                          Case No: 5:06cv120/RS/MD

**JAMES R. MCDONOUGH,**
    Respondent.
_____

**REPORT AND RECOMMENDATION**

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent has filed a motion to dismiss the petition as time barred.  (Doc. 9).  Petitioner has responded.  (Doc. 23).  In addition, both parties have submitted supplemental briefs on a critical aspect of the timeliness issue: what effect, if any, petitioner's proceeding in the Florida Supreme Court had on the federal habeas limitations period.  (*See* docs. 25, 28, 32).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. FLA. LOC. R. 72.2(B).  After careful consideration, it is the opinion of the undersigned that the pleadings and attachments before the court show that the petition is untimely and should be dismissed.

**BACKGROUND AND PROCEDURAL HISTORY**

On March 1, 2000 petitioner was found guilty by jury verdict of one count of robbery in the Circuit Court of Bay County, Florida, case number 99-2335 .  (Doc. 9, ex. B).[1]  On that same date, he was adjudicated guilty and sentenced to 12 years in prison followed by three years probation.  (Ex. C).  The Florida First District Court of

---

[1] Hereafter, all references to exhibits are to those provided at Doc. 9, unless otherwise noted.

Appeal ("First DCA") affirmed the judgment on April 2, 2001. *Pitchford v. State*, 780 So.2d 1032 (Fla. 1st DCA 2001) (copy at ex. E).[2] The First DCA issued its mandate on April 18, 2001. (Ex. F).

On May 11, 2001 petitioner filed in the Supreme Court of Florida an untimely notice of intent to invoke the discretionary jurisdiction of that court. (Exs. G and Y). His notice was accompanied by a motion to accept the untimely notice. (Exs. H and Y).[3] In the motion, petitioner's counsel urged the state high court to accept petitioner's untimely notice, asserting that the public defender's office was responsible for the notice being untimely filed and that "it would be unfair to penalize [petitioner] for this office's mistake." (Ex. H, p. 2). On May 31, 2001 the Florida Supreme Court acknowledged receipt of the notice, assigned petitioner's case number SC01-1079, and dismissed the cause on the ground that the notice was not filed timely. *Pitchford v. State*, 845 So.2d 892 (Fla. 2001) (Table) (copy at ex. I).[4] Petitioner filed a motion for clarification on June 14, 2001. (Exs. J and Y). In that motion, petitioner asked the court "to clarify its Order in light of previous instances where a defective notice was cured by the Court's acceptance of similar, belated motions." (Ex. J). Petitioner attached to his motion an order rendered on August 16, 1999 in the case of *Lavon King v. State of Florida,* Florida Supreme Court case number SC60-95669, where a similar motion had been granted and the notice deemed timely. (*Id.; see also* http://jweb.flcourts.org/pls/docket/ds_docket_search%20).

---

[2]The appellate court's opinion was a per curiam affirmance, with citation to cases then pending before the Supreme Court of Florida. *See Pitchford v. State*, 780 So.2d 1032 (Fla. 1st DCA 2001) (citing *Hayes v. State*, 26 Fla. L. Weekly D209 (Fla. 1st DCA Jan. 10 2001); *Peterson v. State*, 775 So.2d 376 (Fla. 4th DCA 2000); *Hall v. State*, 773 So.2d 99 (Fla. 1st DCA 2000); *Hall v. State*, 767 So.2d 560 (Fla. 4th DCA 2000)).

[3]The Florida Supreme Court docket sheet indicates that petitioner's untimely notice and motion were <u>docketed</u> on May 14, 2001. However, there is a notation that these items were actually <u>filed</u> on May 11, 2001. (Ex. Y). In a later order, the Florida Supreme Court referenced the motion as having been filed on May 11, 2001. (Ex. K).

[4]"It appearing to the Court that the notice was not timely filed, it is ordered that the cause is hereby dismissed on the Court's own motion, subject to reinstatement if timeliness is established on proper motion filed within fifteen days from the date of this order. <u>See</u> Fla. R. App. P. 9.120." (Ex. I).

On April 26, 2002 the Florida Supreme Court issued an order advising the parties that it had treated petitioner's motion for clarification as one for rehearing. (Ex. Y). The court ordered the State to respond to the motion, and to address in its response "the manner in which this Court should process requests for belated discretionary review." (*Id.*). In its response, the State noted that it was responding to six orders presenting the same question. (Doc. 28, ex. AA, p. 1).[5] The State argued that petitioner should have filed a motion pursuant to Florida Rule of Appellate Procedure 9.141(c) seeking belated review, but regardless of his failure to do so, petitioner should be granted belated discretionary review without requiring a Rule 9.141(c) motion.[6] (*Id.*, ex. AA, p. 2). On April 16, 2003 the Florida Supreme Court issued an order stating that petitioner's motion for clarification was treated as a motion for rehearing and denied. (Doc. 9, ex. K). The order denied as moot petitioner's Motion to Accept Untimely Notice to Invoke the Court's Discretionary Jurisdiction. (Exs. K & Y).

On May 16, 2001 petitioner filed in the state trial court a motion to mitigate sentence under Florida Rule of Criminal Procedure 3.800(c). (Ex. X). Petitioner requested that the court reduce his sentence to four years without probation, alleging a number of factors which he believed justified the reduction. (*Id.*). The trial court denied the motion on June 4, 2001. (Ex. M).

On March 27, 2003 petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. N). On November 5, 2003 the trial court issued an order summarily denying the majority of petitioner's claims and setting an evidentiary hearing on the remainder. (Ex. O). After an evidentiary hearing, the court denied the remainder of petitioner's claims in an order dated

---

[5] The State identified the following six cases: Nigel A. Williams v. State, SC01-2888; Sylvester Eugene Curtis v. State, SC01-2342; Thomas King v. State, SC01-2071; Johnny Frank Jordan v. State, SC02-465; Jeff Lee Mays v. State, SC01-2325; and petitioner's case, Kenneth Pitchford v. State, SC01-1079. (Doc. 28, ex. AA, p. 1 n. 1).

[6] Florida Rule of Appellate Procedure 9.141 is entitled "Review Proceedings in Collateral or Post-Conviction Criminal Cases." Subdivision (c) is entitled "Petitions Seeking Belated Appeal or Alleging Ineffective Assistance of Appellate Counsel." FLA. R. APP. P. 9.141(c). Review proceedings under this subdivision are treated as original proceedings. FLA. R. APP. P. 9.141(c)(1).

December 12, 2003.  (Ex. P).  The First DCA affirmed without written opinion on September 15, 2005.  *Pitchford v. State*, 911 So.2d 1238 (Fla. 1st DCA 2005) (Table) (copy at Ex. R).  The mandate issued October 12, 2005.  (Ex. S).

On May 21, 2003 petitioner filed another motion to mitigate sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. T).  The trial court denied the motion on November 7, 2003.  (Ex. V).

Petitioner commenced the instant habeas corpus proceeding by filing a § 2254 petition on June 5, 2006.  (Doc. 1).

## DISCUSSION

Because petitioner filed his § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs the present petition.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  Pursuant to 28 U.S.C. § 2244, a one-year period of limitation applies to the filing of a federal habeas corpus petition by a person in custody pursuant to a state court judgment.  The limitation period runs from the latest of:

> **(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;**
>
> **(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;**
>
> **(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or**
>
> **(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.**

**28 U.S.C. § 2244(d)(1).** According to the tolling provision of § 2244(d), the time during which a "properly filed" application for state postconviction or other

collateral review is pending shall not be counted toward any period of limitation. 28 U.S.C. § 2244(d)(2).

In the instant case, petitioner has not asserted that a government-created impediment to his filing existed, that he bases his claim on a right newly recognized by the Supreme Court, or that the facts supporting his claim could not have been discovered through the exercise of due diligence before his conviction became final. Thus, the statute of limitations must be measured from the remaining trigger, which is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

Respondent contends that petitioner's conviction became final for purposes of § 2244(d)(1)(A) on May 2, 2001, when the 30-day period for petitioner to timely file a notice to invoke the discretionary jurisdiction of the Florida Supreme Court expired. (Doc. 9, pp. 5-6). Petitioner argues that his untimely notice to the Florida Supreme Court was part of the "direct review" process, and that the limitations period did not begin to run until 90 days after the Florida Supreme Court denied his motion for rehearing. (Doc. 32, pp. 2-3). For the reasons that follow, the court concludes that respondent is correct.

Under Florida law, petitioner was allowed to seek the Florida Supreme Court's discretionary review because the First DCA's opinion affirming his conviction cited to at least one appellate decision that was pending before the Florida Supreme Court. *See Jollie v. State,* 405 So.2d 418 (Fla. 1981) (holding that a district court of appeal's per curiam opinion which cites as controlling authority a decision that is pending review in the Supreme Court of Florida constitutes prima facie express conflict and allows the Florida Supreme Court to exercise its jurisdiction). However, in order to invoke the Florida Supreme Court's discretionary jurisdiction, petitioner was required to file the appropriate notice within 30 days after the First DCA rendered its April 2, 2001 opinion, or in this case, by May 2, 2001. *See* FLA. R. APP. P. 9.120(b).[7] No notice was filed by that date. Petitioner's notice to invoke

---

[7]**Florida Rule of Appellate Procedure 9.120(b) provides:**

The jurisdiction of the supreme court described in rule 9.030(a)(2)(A) shall be

discretionary jurisdiction filed on May 11, 2001 was, therefore, dismissed as untimely filed. Where a defendant has failed to timely file a notice to invoke discretionary review, jurisdiction is not properly invoked and does not exist. *See* FLA. R. APP. P. 9.030(a)(2)(A); FLA. R. APP. P. 9.120(a) and (b). Further, because petitioner was entitled to seek review of his conviction in the Supreme Court of Florida but failed to timely do so, he was not entitled to petition the Supreme Court of the United States for a writ of certiorari to review his judgment of conviction, and therefore is not entitled to the 90-day period for filing such a petition. *See Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006) (holding that habeas petitioner's Georgia state court convictions became "final" for purposes of § 2244(d)(1)(A), ten days after the Georgia Court of Appeals affirmed the convictions rather than ninety days after the affirmance, where the petitioner could have sought review during the ten-day period in the Georgia Supreme Court, but failed to do so and, therefore, was not entitled to seek review in the United States Supreme Court); *see also Spottsville v. Terry*, 476 F.3d 1241, 1243 (11th Cir. 2007) (dicta) (finding that habeas petitioner's state court conviction became "final" for purposes of § 2244(d)(1)(A) when the time for seeking review in the state supreme court expired); *see also Coleman v. Davenport*, 2007 WL 1317257 (M.D. Ala. May 4, 2007).[8]

---

invoked by filing 2 copies of a notice, accompanied by the filing fees prescribed by law, with the clerk of the district court of appeal within 30 days of rendition of the order to be reviewed.

*Id.* "An order is rendered when a signed, written order is filed with the clerk of the lower tribunal." FLA. R. APP. P. 9.020(h). Rule 9.020(i) describes the types of motions that toll the time for rendition of an appellate order. The list includes motions for rehearing, clarification and certification under Florida Rule of Appellate Procedure 9.330 or 9.331. *See* FLA. R. APP. P. 9.020(i). When such a motion is timely filed, the final order "shall not be deemed rendered . . . until all of the motions are either abandoned or resolved by the filing of a written order." FLA. R. APP. P. 9.020(i). The record reveals that no such motion was filed in this case.

[8]The undersigned cites *Coleman v. Davenport*, 2007 WL 1317257 (M.D. Ala. May 4, 2007), only as additional source material that supports this court's conclusion, recognizing that the decision is not binding precedent. In *Coleman*, an Alabama prisoner's time to appeal his convictions expired on March 21, 2005 under Alabama law. The petitioner filed his notice of appeal one day later, on March 22, 2005. The notice of appeal was dismissed by the Alabama Court of Criminal Appeals as untimely filed. The federal district court noted that since the petitioner "failed to properly undertake the direct appeal process," he could not petition the United States Supreme Court for review of his convictions, and ultimately held that the petitioner's convictions became final for purposes of § 2244(d)(1)(A) on

**Therefore, the undersigned concludes that in the absence of a timely notice to invoke discretionary jurisdiction, petitioner's conviction became final for purposes of § 2244(d)(1)(A) on May 2, 2001, and the federal habeas statute of limitations began to run.[9]  Absent any tolling, petitioner had until May 3, 2002 to file a federal habeas petition.**

**The tolling subsection in § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with**

---

**March 21, 2005, the date on which his time to seek direct review expired.**

[9]**In his reply, petitioner urged this court to find that the proceedings in the Florida Supreme Court delayed the start of the limitations period, relying on** *Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002) **and** *Bronaugh v. Ohio*, 235 F.3d 280 (6th Cir. 2000).  (Doc. 23, pp. 5-7).  **These cases are inapposite.  In** *Bond*, **the petitioner filed a** <u>timely</u> **motion for discretionary review with the Florida Supreme Court, which was denied.  The Eleventh Circuit held that Bond's conviction became final under 28 U.S.C. § 2244(d)(1) ninety days after the Florida Supreme Court denied Bond's motion for rehearing.  Here, petitioner did not file a timely notice to invoke discretionary review.  Furthermore, in** *Bronaugh*, **the Sixth Circuit decided that under** <u>Ohio</u> **law, a petitioner's application to reopen his direct appeal under Rule 26 of the Ohio Rules of Appellate Procedure was part of Ohio's direct appeal process, rather than a form of postconviction or collateral review.** *Bronaugh*, 235 F.3d at 285-86.  **However, the** *Bronaugh* **court analyzed Ohio law, not Florida law.  Further, as discussed in** *Lambert v. Warden, Ross Correctional*, 81 Fed.Appx. 1 (6th Cir. 2003), **the Ohio state courts have been unanimously hostile to the Sixth Circuit's interpretation of Rule 26 as a continuation of the direct appeal process (as opposed to part of collateral review).** *Id.,* **at \*1-2.  Finally, the** *Bronaugh* **case was internally inconsistent in that after reasoning that a Rule 26(B) application was part of direct review and therefore to be treated under § 2244(d)(1)(A) and not subject to the properly-filed requirement of § 2244(d)(2), the opinion proceeds directly to apply § 2244(d)(2) tolling to the 26(B) application, rather than to view it as delaying the start of the limitations period, as appropriate under § 2244(d)(1)(A).** *Bronaugh*, 235 F.3d at 286; *see also Lambert*, **at \*6-7 (discussing internal inconsistency of** *Bronaugh* **opinion and inconsistency of Sixth Circuit decisional law on the treatment of Rule 26 applications; but holding that "a panel of this court cannot overrule the decision of another panel, however mistaken," and therefore that it must treat the prisoner's Rule 26 application as part of direct review under § 2244(d)(1)(A)).**

**In his supplemental brief, petitioner argues that due to the particular facts of his case, his untimely notice and companion motion to accept the untimely notice should be viewed as part of the direct appeal process.  He maintains that the following factors favor treating the Florida Supreme Court proceedings as a continuation of the direct review process: (1) his appointed counsel who were assigned to perfect his direct appeal were the attorneys who sought belated discretionary review; (2) the Florida Supreme Court's order dismissing petitioner's untimely notice was not a final order because it allowed petitioner to establish timeliness by motion; (3) petitioner's motion for rehearing precipitated an order requiring the State to respond; and (4) all of these events "created a progressive, linear sequence of events from the judgment of conviction through the last opportunity for direct review in the state court."  (Doc. 32, p. 3).  In the absence of any legal authority to support his position, petitioner's arguments do not persuade the undersigned that a notice to invoke the Florida Supreme Court's discretionary jurisdiction that (1) is filed after the time for filing such a notice has expired, (2) is deemed untimely by the Florida Supreme Court and (3) is dismissed as untimely by that court, restarts the direct review process and delays finality of the judgment of conviction.**

respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Petitioner argues in his reply that the proceedings in the Florida Supreme Court on his untimely notice tolled the limitations period. (Doc. 23, pp. 7-8). Respondent contends that construing petitioner's untimely notice and companion motion to accept untimely notice as a petition for belated appeal under Florida Rule of Appellate Procedure 9.141(c), petitioner is not entitled to statutory tolling under § 2244(d)(2) because assuming *arguendo* that a Rule 9.141(c) petition is a "tolling motion" under that subsection, petitioner's application was not "properly filed." (Doc. 28, pp. 3-5).

It is beyond dispute that petitioner's untimely notice to invoke the Florida Supreme Court's discretionary jurisdiction, like an untimely notice of appeal, is not an "application for State post-conviction or other collateral review." The question is whether petitioner's companion motion to accept the untimely notice is considered a "tolling motion" under § 2244(d)(2). For the following reasons, the undersigned concludes that it is not.

Central to this issue is how the Florida Supreme Court treated petitioner's Motion to Accept Untimely Notice to Invoke the Court's Discretionary Jurisdiction. The state high court did not treat petitioner's motion as a new, separate proceeding; rather the court treated it as a motion in the pending proceeding on petitioner's untimely notice to invoke discretionary jurisdiction which sought review of the First DCA's decision in petitioner's direct appeal. Even after the State urged the Florida Supreme Court to consider petitioner's motion as one under Rule 9.141(c) seeking belated review, a proceeding which Florida court's consider a collateral proceeding to the criminal case,[10] the Florida Supreme Court declined to do so. (Doc. 9, ex. Y). Instead, the court denied petitioner's motion as moot. (Ex. K). Under the facts of this case, petitioner's motion to accept untimely notice was not an independent proceeding, and cannot be considered an "application for State post-conviction or other collateral review." Therefore this filing did not toll the limitations period.

---

[10]See *Jones v. State*, 922 So.2d 1088, 1089-90 (Fla. Dist. Ct. App. 2006).

*Case No: 5:06cv120/RS/MD*

**Based on the foregoing, the undersigned concludes that petitioner's untimely notice to invoke discretionary jurisdiction and companion motion to accept the untimely notice did not affect the finality of petitioner's judgment or the commencement of the limitations period.  Nor did these filings toll the limitations period under § 2244(d)(2).**

The next question is whether petitioner filed any other applications in state court between May 3, 2001 and May 3, 2002, and if so, whether they tolled the limitations period.  The record reveals that on May 16, 2001 petitioner filed a Rule 3.800(c) motion.  Respondent asserts that the limitations period was not tolled during the pendency of this application for sentence reduction and modification under Rule 3.800(c)  "due to the nature of rule 3.800(c)." (Doc. 9, p. 7).  The relevant portion of Rule 3.800 reads as follows:

> (c)  Reduction and Modification.  A court may reduce or modify to include any of the provisions of chapter 948, Florida Statutes, a legal sentence imposed by it within 60 days after the imposition, . . .

FLA. R. CRIM. P. 3.800(c) (2000).  In his motion to mitigate sentence, petitioner did not contend that his sentence was illegal; rather, he stated that he was seeking relief under Rule 3.800(c) to reduce his sentence to 4 years.  (Doc. 9, ex. X).  Petitioner sought reduction of his sentence based on his background and a number of other factors, namely: (1) that at the time of sentencing the points reflected on his scoresheet could have allowed him to receive a non-state prison sanction; (2) that the circumstances surrounding the crime showed that there was no weapon involved, no use of force and no verbal or non-verbal threats; (3) that petitioner had no prior criminal felony record; (4) that petitioner's capacity to think clearly and to make good decisions was substantially impaired by the mental and physical effects of addition and recent life-altering events; (5) that petitioner was unaware of the seriousness of the offense committed; (6) that petitioner cooperated with investigators; (7) that the crime was committed in an unsophisticated manner; (8) that petitioner showed remorse for his actions; (9) that the length of his sentence rendered him ineligible for numerous self-help, vocational and educational programs in prison; (10) that petitioner had shown good conduct while incarcerated; (11) that

petitioner had assurances from several former employers that he would have employment when he was released from prison; and (12) that petitioner's family would furnish him with a place to live until he could afford his own. (*Id*).

Florida's Rule 3.800(c) mitigation process is analogous to the state sentence review process which the Eleventh Circuit reviewed in *Bridges v. Johnson*, 284 F.3d 1201 (11th Cir. 2002). In *Bridges*, a Georgia prisoner had been convicted pursuant to a guilty plea. 284 F.3d at 1202. He did not appeal his convictions and sentences, but he did request that his sentence be reviewed by a sentence review panel, pursuant to O.C.G.A. § 17-10-6. *Id.* His application was denied. *Id.* The Eleventh Circuit reviewed the statutory sentence review process and determined that an application for review under the Georgia statute did not qualify as an application for state post-conviction relief under 28 U.S.C. § 2244(d). The Eleventh Court based its decision upon the following factors: (1) the sentence review panel's sole task was to determine whether the sentence was excessively harsh; (2) the statute provided that sentence review was available only to those prisoners who had been sentenced to more than twelve years in prison; (3) the review panel was not required to issue written opinions; (4) the panel was not authorized to increase or completely eliminate a sentence, and (5) the panel's decision was not reviewable. *Id.* at 1203. The Eleventh Circuit concluded that because the state statute was merely a means for comparing sentences to ensure accuracy, viewing it as means to toll the federal limitations period did not enhance exhaustion of state review or finality of state court judgments. *Id.*

Applying the *Bridges* analysis to the instant case, the undersigned concludes that a motion for reduction or modification made pursuant to FLA. R. CRIM. P. 3.800(c) does not qualify under the statute as "State post-conviction or other collateral review," 28 U.S.C. § 2244(d)(2), and does not toll the § 2244(d) limitations period. A motion for modification or reduction under Rule 3.800(c) is commonly referred to as a motion to mitigate sentence. It cannot be used to obtain relief from the judgment, *State v. Moten*, 698 So. 2d 1345 (Fla. Dist Ct. App. 1997), or to contest the legality of the sentence, *Ferguson v. State*, 846 So. 2d 1168 (Fla. Dist. Ct. App. 2003). The Rule

further provides that it may not be used in cases where the death penalty has been imposed, or in cases in which the trial judge has imposed the minimum mandatory sentence or has no sentencing discretion.  FLA. R. CRIM. P. 3.800(c).  Moreover, a motion for modification may not be used to increase or completely eliminate a sentence.  Whether to grant a modification or reduction is a decision left to the sentencing court's discretion, and the judge's decision upon such motion is not reviewable.

Because the above discussion reveals that a Rule 3.800(c) application is merely a means for a defendant to seek a reduction in his legal sentence on the basis of factors which might be construed as mitigating, and is not an attack on the constitutionality or legal correctness of a sentence or judgment, viewing such an application as a means to toll the limitations period would not enhance exhaustion of state review or finality of state court judgments.  Therefore, this type of sentence review does not qualify under the statute as "State post-conviction or other collateral review," 28 U.S.C. § 2244(d)(2), and does not toll the § 2244(d) limitations period.

The next post-conviction motion filed by petitioner was his Rule 3.850 motion; however, that was not filed until after the limitations period expired on May 3, 2002.  Thus, that application did not trigger the tolling benefit of § 2244(d)(2).  *See Webster v. Moore*, 199 F.3d 1256, 1269 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").  Nor could the later filing reinitiate the federal limitations period.  *Tinker v. Moore,* 255 F.3d 1331, 1333 (11th Cir. 2001).  As the petition in this case was not filed until June 5, 2006, it is untimely.

Petitioner claims entitlement to equitable tolling.  The Supreme Court of the United States has not squarely addressed the question whether equitable tolling is applicable to the AEDPA's statute of limitations.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 n. 8, 125 S.Ct. 1807, 1814 n. 8, 161 L.Ed.2d 669 (2005).  However, because

it is well-established in this Circuit that equitable tolling does apply,[11] and because petitioner is not entitled to equitable tolling under any standard, the undersigned assumes without deciding its application for purposes of this case.

"Equitable tolling is an extraordinary remedy which is typically applied sparingly," *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 457-58, 112 L.Ed.2d 435 (1990)). Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace*, 544 U.S. at 418, 125 S.Ct. at 1814; *see also Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (holding that equitable tolling is appropriate "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."); *see, e.g., Irwin*, 498 U.S. at 96, 111 S.Ct. at 458) ("[Federal courts] have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."). "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." *Drew v. Dep't of Corrections*, 297 F.3d 1278, 1286 (11th Cir. 2002).

In the instant case, petitioner asserts that the following circumstances support a finding that he exercised due diligence in preserving his legal rights. According to petitioner, he maintained close contact with his appointed counsel regarding the status and related effect of his state court proceedings, including inquiring with counsel whether a motion could be filed to toll the federal habeas

---

[11]The Eleventh Circuit has allowed equitable tolling to mitigate application of § 2244(d)'s statutory deadline under very limited circumstances:

> Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when "extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition. Equitable tolling is an extraordinary remedy that is typically applied sparingly; however, it is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control *and* unavoidable even with diligence. The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner.

*Wade v. Battle*, 379 F.3d 1254, 1264-65 (11th Cir. 2004) (internal quotations and citations omitted; emphasis in original).

limitations period. (Doc. 23, p. 8, 9, 12). Petitioner also communicated with the courts "seeking answers to his pressing questions." (*Id.*, pp. 8-10, 12). Petitioner further asserts that he was diligent in researching the various time frames for pursuing post-conviction relief, for example, when he learned that the mandate had issued on his direct appeal, he timely filed a Rule 3.800(c) motion. (*Id.*, p. 9, 13). Third, petitioner contends that as a result of his own research, he "ultimately became convinced" that the federal habeas limitations period was being tolled until the Florida Supreme Court ruled on the motion for clarification. (*Id.*, p. 10). Lastly, petitioner emphasizes that it was attorney error in the untimely filing of the notice to invoke the Florida Supreme Court's discretionary jurisdiction which caused the "timeliness issue" to arise in this court. (*Id.*, pp. 10-11).

As to the second prong, petitioner argues that extraordinary circumstances "stood in [his] way to prevent timely filing of the habeas petition." (*Id.*, p. 13). He identifies those circumstance as the state public defender's error in failing to timely file the notice of intent to invoke discretionary jurisdiction. (*Id.*, pp. 13-14).

The record discloses no circumstances sufficiently extraordinary that were both beyond petitioner's control and unavoidable even with due diligence. A garden variety error - allowing a filing deadline to pass - caused petitioner's notice to invoke the Florida Supreme Court's discretionary jurisdiction to be filed untimely. The Eleventh Circuit has repeatedly denied equitable tolling predicated on a claim of attorney negligence. *See Helton v. Secretary for Dep't of Corrections*, 259 F.3d 1310, 1313 (11th Cir. 2001); *Steed v. Head*, 219 F.3d at 1300; *Sandvik v. United States*, 177 F.3d at 1271-72. As the Supreme Court has observed, "[i]f credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline." *Lawrence v. Florida*, 127 S.Ct. 1079, 1085 (2007).

Furthermore, petitioner concedes that upon learning of the First DCA's mandate in his direct appeal, he "assum[ed] his judgement [sic] and sentence was final for post-conviction purposes. . . ." (doc. 23, p. 9), and in an abundance of caution filed his Rule 3.800(c) motion within Florida's sixty-day deadline notwithstanding the pendency of the Florida Supreme Court proceeding. (Doc. 23,

pp. 9, 13). He exercised that same caution by filing his Rule 3.850 motion within Florida's two-year deadline notwithstanding the pendency of his motion for rehearing in the Florida Supreme Court. (Doc. 9, ex. N, p. 2). Yet petitioner fails to explain why he failed to exercise the same caution in ensuring that his federal habeas petition was timely filed. Based on the foregoing, the undersigned finds that petitioner has not established entitlement to equitable tolling.

## CONCLUSION

The instant petition for writ of habeas corpus is untimely. The record does not support application of the equitable tolling doctrine or any other exception to the limitations period. Thus, the petition should be dismissed.

Accordingly, it is respectfully RECOMMENDED:

1. That respondent's motion to dismiss (doc. 9) be GRANTED.

2. That the petition for writ of habeas corpus, (doc. 1) challenging the conviction and sentence in *State of Florida v. Kenneth F. Pitchford*, in the Circuit Court of Bay County, Florida, case no. 99-2335, be DISMISSED WITH PREJUDICE.

3. That the clerk be directed to close the file.

At Pensacola, Florida, this 11th day of July, 2007.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**